**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Daniel Mitchell, | NO. C 08-01166 JW |
| Plaintiff, | **ORDER GRANTING COUNTER-DEFENDANTS' MOTION TO DISMISS; GRANTING IN PART AND DENYING PART PLAINTIFF'S MOTION TO STRIKE** |
| v. | |
| County of Monterey, | |
| Defendant. | |

## I.  INTRODUCTION

Daniel Mitchell ("Plaintiff") brings this putative class action against the County of Monterey ("Defendant" or "County"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.  The County brings counterclaims against Plaintiff and the putative class, the Deputy Sheriff's Association of Monterey County ("DSA") and various individuals employed by the Monterey County Sheriff's Department ("Individual Counter-Defendants") (collectively, "Counter-Defendants"), alleging that Plaintiff and the Individual Counter-Defendants' wages were erroneously set too high and that the County has mistakenly paid overtime wages after counting non-working hours to reach the overtime threshold.

Presently before the Court are Counter-Defendants' Motion to Dismiss Defendant County of Monterey's Counterclaims (hereafter, "Motion to Dismiss," Docket Item No. 20) and Plaintiff's Motion to Strike Defendant's Affirmative Defenses (hereafter, "Motion to Strike," Docket Item No. 21).  The Court found it appropriate to take the matter under submission without oral argument.  See

United States District Court

For the Northern District of California

1  Civ. L.R. 7-1(b).  Based on the papers submitted to date, the Court GRANTS Counter-Defendants'

2  Motion to Dismiss, and GRANTS in part and DENIES in part Plaintiff's Motion to Strike.

## II.  BACKGROUND

4        Plaintiff brings this putative class action on behalf of all employees and former employees of

5  the County that were allegedly deprived of their statutorily required compensation.  (Complaint for

6  Violations of The Fair Labor Standards Act ¶¶ 2, 4, hereafter, "Complaint," Docket Item No. 1.)

7  Plaintiff alleges two theories under which the County deprived of pay required under the FLSA.

8  First, Plaintiff alleges that he was not paid for compensable pre- and post-shift work, including the

9  time he spent equipping himself with required job-related gear.  (Complaint ¶¶ 42-57.)  Second,

10  Plaintiff alleges that the County did not include nondiscretionary bonuses and other "extra

11  compensations" in calculating his "regular rate" of pay for purposes of determining his overtime

12  pay.  (Id. ¶¶ 58-73.)

13        In an Answer and Counterclaim filed on March 19, 2008, the County alleges as follows:

14        In 2001, the County and DSA negotiated a collective-bargaining agreement that was

15  to be effective from July 1, 2001 to June 30, 2006 ("2001-2006 MOU").  (Answer and

16  Counterclaim ¶ 104, hereafter, "Answer," Docket Item No. 7.)  DSA entered into this

17  agreement on behalf of Plaintiff and the Individual Counter-Defendants.  (Id.)  During the

18  negotiations of the 2001-2006 MOU, the wages were set using a benchmark wage

19  established by averaging the wages for specified positions in three city police departments,

20  including the City of Salinas.  (Id.)  After setting the wages according to the specified

21  average, the County discovered that the wage figures provided by Salinas were incorrectly

22  high.  (Id. ¶ 106.)

23        Some time before or after the County learned of the mistake made by the City of

24  Salinas, the County and DSA negotiated a new collective bargaining agreement for the

25  period July 1, 2006 through June 30, 2009 ("2006-2009 MOU").  (Answer ¶ 107.)  The

26  2006-2009 MOU continued the wages that were set incorrectly high under the 2001-2006

27

28  2

**United States District Court**

For the Northern District of California

1    MOU.  (Id.)  Thus, under the 2006-2009 MOU, the County has continued to pay wages that

2    are improperly high.  (Id.)

3    Under the FLSA, and both the 2001-2006 MOU and 2006-2009 MOU, the County is

4    supposed to pay overtime wages only after an employee has actually worked the maximum

5    number of regular hours.  (Answer ¶¶ 112-114.)  For the last four years, the County has paid

6    overtime wages to Plaintiff and some or all of the Individual Counter Defendants after

7    counting non-working hours (such as vacation time or sick leave) towards the overtime

8    threshold.  (Id. ¶ 115.)  The County has therefore paid more than what was required for

9    overtime.  (Id.)

10    The overpayment of overtime wages is the result of a mistake for which the County is

11    not at fault.  (Id. ¶ 117.)

12    On the basis of the allegations outlined above, Defendant alleges two counterclaims as

13    follows:  (1) Mistake as to Base Rate of Pay; and (2) Mistake as to Accumulating Non-Working

14    Hours for Overtime.  Defendant also alleges eighteen affirmative defenses including, *inter alia*:  (1)

15    Reasonable and Good Faith Belief (Fifth Affirmative Defense); (2) Offset for Excess Base Wages

16    Paid (Seventh Affirmative Defense); (3) Waiver and Estoppel (Eleventh Affirmative Defense); (4)

17    Failure to Exhaust Collective Bargaining (Fourteenth Affirmative Defense); (5) Failure to Exhaust

18    Grievance Procedure (Fifteenth Affirmative Defense); (6) Plaintiff and the putative class are Bound

19    by Terms of a Contract (Sixteenth Affirmative Defense); (7) Reasonable and Good Faith Reliance

20    on Collective Bargaining Agreement (Seventeenth Affirmative Defense); and (8) Lack of Legal or

21    Equitable Basis for Relief (Eighteenth Affirmative Defense).[1]

22    Presently before the Court are Counter-Defendants' Motion to Dismiss Defendant's

23    Counterclaims and Plaintiff's Motion to Strike Defendant's Affirmative Defenses.

24

25

26    [1]  These eight Affirmative Defenses are at issue in the present Motion to Strike.  Plaintiff
does not, at this time, move to strike the remaining ten Affirmative Defenses asserted in Defendant's
27    Answer.

28                                                                3

<div style="float:left">**United States District Court**
For the Northern District of California</div>

1          **III.  STANDARDS**

2  **A.      Motion to Dismiss**

3          Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a

4  defendant for failure to state a claim upon which relief may be granted against that defendant.

5  Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient

6  facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

7  (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984).

8  For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the

9  complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v.

10  City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved

11  in favor of the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

12          However, mere conclusions couched in factual allegations are not sufficient to state a cause

13  of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845

14  F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief

15  that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974

16  (2007).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect

17  by amendment.  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

18  **B.      Motion to Strike**

19          Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any

20  pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

21  The Ninth Circuit has held that "[t]he function of a 12(f) motion to strike is to avoid the expenditure

22  of time and money that must arise from litigating spurious issues by dispensing with those issues

23  prior to trial."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on other grounds,

24  Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

25          However, "[m]otions to strike are generally regarded with disfavor because of the limited

26  importance of pleading in federal practice, and because they are often used as a delaying tactic."

27

28                                                      4

1  Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); See, e.g., Cal.

2  Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 1028 (C.D. Cal. 2002).

3  Accordingly, such motions should be denied unless the matter has no logical connection to the

4  controversy at issue and may prejudice one or more of the parties to the suit. SEC v. Sands, 902 F.

5  Supp. 1149, 1166 (C.D. Cal. 1995); LeDuc v. Kentucky Central Life Ins. Co., 814 F. Supp. 820, 820

6  (N.D. Cal. 1992).  When considering a motion to strike, the court "must view the pleading in a light

7  most favorable to the pleading party."  In re 2TheMart.com, Inc. Securities Litig., 114 F. Supp. 955,

8  965 (C.D. Cal. 2000).

9                                          **IV.  DISCUSSION**

10  **A.      Counter-Defendants' Motion to Dismiss**

11         Counter-Defendants move to dismiss Defendant's First and Second Counterclaims on several

12  grounds, including that Defendant has failed to meet and confer as required under Cal. Gov. Code §

13  3505 prior to asserting these counterclaims.  (Motion to Dismiss at 6.)  The Court considers this

14  issue first since it may dispose of the entire motion.

15         Cal. Gov. Code § 3505 provides:

16         The governing body of a public agency, or such boards, commissions, administrative officers
           or other representatives as may be properly designated by law, shall meet and confer in good
17         faith regarding wages, hours, and other terms and conditions of employment with
           representatives of such recognized employee organizations . . . prior to arriving at a
18         determination of policy or course of action.

19         The California Supreme Court has provided a three-part inquiry to clarify when the meet and

20  confer requirement of Section 3505 applies.  First, a court must consider whether the action

21  proposed by a government employer would have "a significant adverse effect on the wages, hours,

22  or working conditions."  Claremont Police Officers Assoc. v. City of Claremont, 39 Cal. 4th 623,

23  638 (2006).  Second, if the proposed action would have a significant adverse effect, the court must

24  consider whether the significant adverse effect "arises from the implementation of a fundamental

25  managerial or policy decision."  Id.  If the significant adverse effect does arise from

26  "implementation" of such a decision, then the meet and confer requirement applies.  Id.  Third, if the

27

28                                              5

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    meet and confer requirement applies, then the government employer must meet and confer if "the

2    employer's need for unencumbered decision-making in managing its operations is outweighed by

3    the benefit to employer-employee relations."  Id.  There is no clear test for determining whether an

4    effect arises from "implementation."  See id. at 633-35 (discussing the distinction between a

5    fundamental policy decision and the implementation of that policy decision).  By way of example,

6    however, California courts have recognized that, "although an employer has the right unilaterally to

7    decide that a layoff is necessary, he must bargain about such matters as the timing of the layoffs and

8    the number and identity of employees affected."  Id. at 634 (quoting Los Angeles County Civil Serv.

9    Comm. v. Superior Court, 23 Cal. 3d 55, 64 (1978)).

10        In this case, the County seeks "a declaration that wages payable under the current 2006-2009

11   MOU may be corrected to reflect the correct calculation of wages based on the correct benchmark."

12   (Answer ¶ 110.)  The County also seeks "a declaration that the current MOU does not require the

13   County to include non-working hours when determining eligibility."  (Id. ¶ 118.)  The Court finds

14   that these requests essentially seek to shift the County's employment policies, and reflect the types

15   of policy decisions that may have significant adverse effects on the County's employees.

16   Accordingly, under the first two steps of the City of Claremont three-part inquiry, the meet and

17   confer requirement of Section 3505 applies.

18        The County contends that even if Section 3505 applies under the first two steps, the third

19   step "would only lead to the conclusion that the County need not meet and confer in this case

20   because the transaction cost of the bargaining process . . . militates against requiring collective

21   bargaining."  (Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's

22   Motion to Dismiss Counterclaims at 8, Docket Item No. 38.)  The County's contention is

23   insufficient, however, because the focus of a motion to dismiss is on the pleadings.  In its Answer,

24   the County does not allege that its need for unencumbered decision-making in managing its

25   operations is outweighed by the benefit of its employee relations.  See City of Claremont, 39 Cal.

26

27

28                                            6

United States District Court

For the Northern District of California

1  4th 623 at 638.  Such an allegation is necessary to exempt the County from the meet and confer

2  requirement.

3          Accordingly, the Court GRANTS Counter-Defendants' Motion to Dismiss Defendant's First

4  and Second Counterclaims.  However, the Court finds that the defects identified in this Order may

5  be cured by amendment.  Thus, the County is granted leave to amend its counterclaims, consistent

6  with the terms of this Order.

7  **B.      Plaintiff's Motion to Strike**

8          Plaintiff moves to strike the County's Fifth, Seventh, Eleventh, Fourteenth, Fifteenth,

9  Sixteenth, Seventeenth and Eighteenth Affirmative Defenses on grounds that (1) ignorance of the

10 law is not an affirmative defense (as to the Fifth Affirmative Defense); (2) Plaintiff and the putative

11 class cannot waive or abrogate their rights under the FLSA (as to the Eleventh, Sixteenth and

12 Seventeenth Affirmative Defense); (3) Plaintiff and the putative class are not required to exhaust

13 their administrative remedies (as to the Fourteenth and Fifteenth Affirmative Defenses); and (4) the

14 issue of pre- and post-shift compensation under the FLSA is an appropriate subject for judicial

15 resolution (as to the Eighteenth Affirmative Defense).  The Court considers each issue in turn.[2]

16 **1.      Fifth and Seventeenth Affirmative Defenses**

17         Plaintiff moves to strike the County's Fifth and Seventeenth Affirmative Defenses on the

18 ground that it amounts to nothing more than claiming ignorance of the law, which is an invalid

19

20

21

---

22         [2] The Seventh Affirmative Defense is for an offset of excess base wages.  It is based on
factual allegations similar to the County's first counterclaim, but it does not request any alteration to
23 the 2006-2009 MOU.  (Answer ¶ 80.)  Although Plaintiff moves to strike the County's Seventh
Affirmative Defense, Plaintiff does not address it anywhere in his motion.  The Court finds no
24 independent reason for striking the Seventh Affirmative Defense.  Accordingly, the Court DENIES
Plaintiff's Motion to Strike the Seventh Affirmative Defense.
25         Similarly, the County concedes that its Fifteenth Affirmative Defense is improper.
(Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Strike
26 Affirmative Defenses at 8, hereafter, "Opposition to Motion to Strike," Docket Item No. 35.)
Accordingly, the Court GRANTS Plaintiff's Motion to Strike Defendant's Fifteenth Affirmative
27 Defense.

28                                              7

United States District Court

For the Northern District of California

affirmative defense.[3]  (Motion to Strike at 3-4.)  The County contends that its Fifth and Seventeenth Affirmative Defenses are valid because they shorten the statutory period of limitations for Plaintiff's FLSA claims from three years to two years.  (Opposition to Motion to Strike at 2.)

The statute of limitations applicable to Plaintiff's FLSA claims is codified at 29 U.S.C. § 255(a).  It establishes a two-year limitations period for most FLSA claims and a three-year period for claims arising out of willful violation of the statute.  Id.  An employer will be found in willful violation of the FLSA only if it can be determined that the employer knew or showed reckless disregard as to whether it was violating the statute.  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  The fact that an employer acts unreasonably in determining its legal obligations is not sufficient to show that the employer acted recklessly.  Id. at 135 n.13.

Whether or not a violation of the FLSA was willful is a question of fact properly submitted to a jury.  Brinkman v. Department of Corrections, 21 F.3d 370, 373 (10th Cir. 1994).  However, where an employer has relied on substantial legal authority or upon the advice of counsel, a finding of willfulness may be precluded as a matter of law.  See Service Employees Int'l Union, Local 102 v. County of San Diego, 60 F.3d 1346, 1355-56 (9th Cir. 1994); see also Baker v. Delta Air Lines, 6 F.3d 632, 645 (9th Cir. 1993).

With respect to Plaintiff's FLSA claims, Plaintiff alleges:

> At all times relevant hereto [the County] . . . willfully and knowingly violated the [FLSA] . . . .  (Complaint ¶ 53.)

> At all times relevant hereto [the County's] failure to fully compensate [Plaintiff] for all hours worked was not in good faith, and was a willful violation of the [FLSA].  Thus [Plaintiff is] entitled to a three year statute of limitations.  (Complaint ¶ 54.)

In response, the County asserts two affirmative defenses, one of a "reasonable and good faith belief" (the Fifth Affirmative Defense) and one of a "reasonable and good faith reliance on the collective bargaining agreement" (the Seventeenth Affirmative Defense).  They are as follows:

---

[3]  Plaintiff misconstrues the County's Seventeenth Affirmative Defense.  Plaintiff contends that the Seventeenth Affirmative Defense should be stricken because it seeks to hold Plaintiff to the terms of the 2006–2009 MOU.  (Motion to Strike at 7.)  However, the defense actually speaks to the County's good faith in paying Plaintiff all that it believed Plaintiff was entitled to.

8

**United States District Court**
For the Northern District of California

1
2
3
4

> At all relevant times, the County acted in good faith and on reasonable grounds for believing that it had not committed any violations of the FLSA.  (Answer ¶ 78.)
>
> The County acted in good faith reliance on the provisions of the MOU that govern the rate of pay in calculating overtime pay for Plaintiff[] by excluding increments added to the base rate of pay.  (Answer ¶ 97.)

5

In light of Plaintiff's willfulness allegation, the County is entitled to assert its affirmative

6

defenses of good faith belief and reliance to preclude a showing of willfulness or reckless disregard.

7

Accordingly, the Court DENIES Plaintiff's Motion to Strike the County's Fifth and

8

Seventeenth Affirmative Defenses.

9

### 2.      The Eleventh and Sixteenth Affirmative Defenses

10

Plaintiff moves to strike the County's Eleventh and Sixteenth Affirmative Defenses on the

11

ground that a plaintiff cannot abrogate rights under the FLSA by entering into a contract.  (Motion to

12

Strike at 4, 6.)

13

"FLSA rights cannot be abridged by contract or otherwise waived because this would nullify

14

the purposes of the statute and thwart the legislative policies it was designed to effectuate."

15

Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740 (1981).

16

With respect to its Eleventh Affirmative Defense for Waiver and Estoppel and Sixteenth

17

Affirmative Defense for Binding Plaintiff to Terms of a Contract, the County alleges that Plaintiff's

18

conduct and the 2006-2009 MOU obviate Plaintiff's recovery under the FLSA.  (Answer ¶¶ 88, 96.)

19

In light of Barrentine, the Court finds that Defendant may not assert these affirmative defenses.

20

Defendant does not cite to any authority for the proposition that, notwithstanding Barrentine's broad

21

language, it may nevertheless pursue a waiver defense.

22

Accordingly, the Court GRANTS Plaintiff's Motion to Strike the County's Eleventh and

23

Sixteenth Affirmative Defenses.

24

### 3.      The Fourteenth Affirmative Defense

25

Plaintiff moves to strike the County's Fourteenth Affirmative Defense on the ground that

26

Plaintiff is not required to exhaust the collective bargaining process before bringing their FLSA

27

claims.  (Motion to Strike at 5-6.)

28

9

United States District Court

For the Northern District of California

1    Under the FLSA, there is "no exhaustion requirement or other procedural barriers" before a

2   plaintiff may bring a claim in federal court. See Barrentine, 450 U.S. at 740.  Further, an

3   individual's rights under the FLSA "are independent of the collective-bargaining process."  Id. at

4   745; see also Collins v. Lobdell, 188 F.3d 1124, 1127 (9th Cir. 1999).

5    The Court finds that the County's Fourteenth Affirmative Defense for Failure to Exhaust

6   Collective Bargaining is an improper affirmative defense because exhaustion of administrative

7   remedies, even if required by a collective bargaining agreement, does not preclude an action under

8   the FLSA in federal court.

9    Accordingly, the Court GRANTS Plaintiff's Motion to Strike the County's Fourteenth

10  Affirmative Defense.

11                **4.       The Eighteenth Affirmative Defense**

12   Plaintiff moves to strike the County's Eighteenth Affirmative Defense on the ground that the

13  compensability of pre- and post-shift work is routinely litigated under the FLSA.  (Motion to Strike

14  at 7-8.)

15   Under the FLSA, individuals have successfully pursued causes of action for pre- and post-

16  shift activities for which they were not being compensated.  See IBP, Inc. v. Alvarez, 546 U.S. 21,

17  30-32 (2005); Lemmon v. City of San Leandro, 538 F. Supp. 2d 1200, 1203-08 (N.D. Cal. 2007).

18  The Supreme Court has established the following legal standard by which courts are to consider

19  whether pre- and post-shift activities are compensable under the FLSA:  "activities performed either

20  before or after the regular work shift" are compensable "if those activities are an integral and

21  indispensable part of the principal activities for which [the] workmen are employed."  Steiner v.

22  Mitchell, 350 U.S. 247, 256 (1956).

23   With respect to its Eighteenth Affirmative Defense for Lack of Legal or Equitable Basis for

24  Relief, the County alleges:

25        The issues relating to pre- and post-shift activities are properly within the scope of
           bargaining, and are not susceptible to judicial resolution in that there are no clear or objective
26        standards that can enable a court to make legally justifiable decisions about the time needed
           to complete these activities, the appropriate manner in which they should be performed, and

27

28                                        10

the appropriate form or amount of compensation, if any, to be paid.  The Court should therefore abstain from resolving these issues and leave these issues to be resolved by the parties in the collective bargaining process.  (Answer ¶ 98.)

In light of the principle established in <u>Steiner</u> and the case law applying that principle to FLSA claims for compensation of pre- and post-shift work activities, the Court finds that Plaintiff's First Cause of Action under the FLSA is susceptible to judicial resolution.

Accordingly, the Court GRANTS Plaintiff's Motion to Strike Defendant's Eighteenth Affirmative Defense.

## V.  CONCLUSION

The Court GRANTS Counter Defendants' Motion to Dismiss Defendant's Counterclaims with leave to amend.

The Court GRANTS in part and DENIES in part Plaintiff's Motion to Strike Defendant's Affirmative Defenses, as follows:

(1)     The Court GRANTS Plaintiff's Motion to Strike with respect to Defendant's Eleventh, Fourteenth, Fifteenth, Sixteenth and Eighteenth Affirmative Defenses.

(2)     The Court DENIES Plaintiff's Motion to Strike with respect to Defendant's Fifth, Seventh and Seventeenth Affirmative Defenses.

Dated:  December 17, 2008

JAMES WARE
United States District Judge

United States District Court
For the Northern District of California

11

**United States District Court**
For the Northern District of California

1   **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2   David Emilio Mastagni davidm@mastagni.com
    David Philip Mastagni dmastagni@mastagni.com
3   James Byron Carr jcarr@mastagni.com
    William K. Rentz rentzb@co.monterey.ca.us
4

5   **Dated:  December 17, 2008**                    **Richard W. Wieking, Clerk**

6

7                                                    **By:   /s/ JW Chambers**
                                                          **Elizabeth Garcia**
                                                          **Courtroom Deputy**
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28